**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 4:19-cr-00603-SNLJ-DDN |
| v. | ) | |
| | ) | |
| JOSHUA BOSTIC, | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPRESS**
**EVIDENCE**

The United States of America submits this response in opposition to Defendant Joshua

Bostic's motion to suppress evidence and statements [Doc. 25].

During a June 23, 2019, traffic stop of Bostic for missing and incorrect license plates, police

found a loaded handgun, marijuana, and methamphetamine in the vehicle he was driving. Bostic

argues he is entitled to suppress the evidence. Bostic is incorrect. The evidence was lawfully

obtained.

**I.      FACTS:**

 On June 23, 2019, St. Louis Metropolitan Police Officers Smith and Shoults were on patrol

in downtown St. Louis City. They observed a Dodge Charger that was missing a front license

plate. When officers ran a computer search on the back license plate, they learned that the plate

belonged to a Honda Accord, not a Dodge Charger. Officers conducted a traffic stop. As the

officers approached the driver's side, they noticed a strong odor of marijuana coming from the

vehicle. The driver, Joshua Bostic, quickly exited the vehicle and locked it behind him. Officers

conducted a patdown of Bostic for officer safety and informed him he would be detained pending

1

investigation. Bostic resisted the lawful detention and threw the keys to the vehicle into a flower

pot. Officers conducted a full search of Bostic's person. It revealed a baggie of ten suspected Xanex

pills in his front pants pocket. Officers approached the vehicle and saw a baggie with suspected

marijuana in the car through the window. Officers located the keys to the vehicle in the flower pot

and used them to unlock it. Officers conducted a search of the vehicle and found a Smith and

Wesson Shield 9mm handgun loaded with seven live cartridges in the driver's side door pocket.

In the rear passenger floorboard, officers found a backpack containing 162 suspected Xanex pills

matching those from Bostic's pocket, 21.84g of marijuana, a scale with suspected marijuana

residue, and 40 pills of methamphetamine (5.4g). A computer check of Rejis and Mules revealed

five past arrests for possession of marijuana and an active warrant out of St. Louis County for

violation of financial responsibility.  The officers arrested Bostic for several offenses and issued

him for his license plate violations.

## II.     ARGUMENT:

### 1.  The Officers Properly Stopped the Car.

Officers properly stopped Bostic for two traffic violations occurring in their presence: 1)

failure to display a rear license plate, and 2) failure to display a proper front license plate.

"An officer who observes a violation of the law has probable cause to initiate a traffic stop,

and such a stop comports with the Fourth Amendment." *United States v. Riley*, 684 F.3d 758, 762

(8th Cir. 2012); *see also United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004) ("While

'reasonable suspicion' must be more than a hunch, the Fourth Amendment only requires that police

articulate some minimal, objective justification for an investigatory stop."); *U.S. v. Linkous*, 285

F.3d 716 (8th Cir. 2002) ("it is well established that a traffic violation—however minor—creates

probable cause to stop the driver of a vehicle."); *see also United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008) (same).

The officers properly pulled over the Charger because the vehicle 1) was missing a front license plate and 2) had a rear plate belonging to another vehicle. These are violations of Missouri traffic laws. *See* V.A.M.S. 301.130.5 ("No motor vehicle or trailer shall be operated on any highway of this state unless it shall have displayed thereon the license plate or set of license plates issued by the director of revenue or the state highways and transportation commission and authorized by section 301.140…License plates shall be fastened to all motor vehicles …on the front and rear of such vehicles …"); *see also* St. Louis ordinances 17.52.300; 17.52.290.

Because the traffic stop was valid, Bostic's claim that the stop was "pretextual" is meritless. Courts routinely reject claims that a traffic stop is pretextual when there is probable cause for the stop. *See, e.g., United States v. Bell*, 86 F.3d 820 (8th Cir. 1996) (rejecting claim that traffic stop was pretextual because "If the officer has probable cause to stop the violator, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant."); *United States v. Cummins*, 920 F.2d 498, 500–01 (8th Cir. 1990) ("In our view, this otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity. It is also our view that the stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions."); *United States v. Anderson*, No. CR15-0046, 2015 WL 3990910, at *5 (N.D. Iowa June 30, 2015) ("If such a claim [that the traffic stop is invalid] is being made…it is without merit. Probable cause existed to believe that the vehicle was being operated without valid registration. That reason alone justified a vehicle stop, even if it was a pretext for further investigation."). Further, officers issued Bostic traffic citations for both violations, illustrating that the stop was not pretextual.

In other words, even *if* the officers were stopping the car for an ulterior motive, the stop was valid under Eighth Circuit precedent. Bostic lacks any legitimate basis for contesting the stop.

## 2. The Officers Properly Searched the Car.

Bostic mischaracterizes the search of the car as a "search incident to arrest" [Doc. 25, p. 4]. It was not. It was a warrantless search of an automobile based on probable cause.  Probable cause of the car was supported by three things: 1) the smell of marijuana coming from the vehicle, 2) Bostic's nervous and combative behavior, and 3) the marijuana plainly viewed through the car window.

Police officers may "conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. Farnell*, 701 F.3d 256, 264 (8th Cir. 2012). This exception to the warrant requirement is commonly referred to as "the automobile exception." *United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016).  *See also Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (holding is a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits a search with nothing more).  "In determining whether an officer had probable cause to search, courts apply a common sense approach and consider all relevant circumstances." *Farrell*, 701 F.3d at 264.

In this case, as officers approached the vehicle, they smelled the odor of marijuana emanating from it. This alone supplies probable cause. The Eighth Circuit has found that the smell of marijuana alone may provide probable cause to search an entire vehicle for drugs. *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) (the officer's detection of the smell of burnt marijuana while conducting a search gave him probable cause to search an entire vehicle for drugs) (citing *United States v. Caves*, 890 F.2d 87, 90 (8th Cir. 1989)); *see also United States v. Mayfield*,

678 Fed. Appx. 437, 439 (8th Cir. 2017) ("The parties agree that the odor of marijuana emanating from a vehicle provides probable cause to search the vehicle."); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (warrantless search of vehicle was lawful where deputy smelled odor of burnt marijuana coming from vehicle while ticketing defendant for seatbelt violations).   At a minimum, even if it were not enough by itself, the odor of an illegal drug is highly probative in establishing probable cause for a search.  *See Johnson v. United States*, 333 U.S. 10 (1948).

While probable cause could be established from the smell of marijuana alone, officers made other observations supporting probable cause.  As officers approached the drivers' side of the car, Bostic exited and locked the car behind him. When confronted with a detention pending investigation, he resisted that detention violently. While resisting that detention, he threw his keys in a flower pot, presumably to prevent officers' entry into the vehicle. A defendant's nervous behavior can also be a factor establishing, or assisting in establishing, probable cause.  *See United States v. Zamora Garcia*, 831 F.3d 979, 984 (8th Cir. 2010) (citing *United States v. Mayo*, 627 F.3d 709, 714 (8th Cir. 2010)) (nervous behavior was a favor supporting probable cause); *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004).  Nervous behavior, particularly when coupled with other factors such as the smell of marijuana, demonstrates probable cause to search a car. *Mayo*, 627 F.3d at 714.

Finally, after smelling marijuana and experiencing a nervous and combative subject, officers looked through the car window and saw marijuana. They thereafter entered the car and seized it.  "It is settled that an officer, without a warrant, may seize an object in plain view provided the officer is lawfully in the position from which he or she views the object, the object's incriminating character is immediately apparent, and the officer has a lawful right to access the object." *United States v. Bynum*, 508 F.3d. 1134, 1137 (8th Cir. 2007).  Bostic does not challenge,

5

nor could he, that officers were lawfully in the position from which they viewed the marijuana, as they were simply standing next to the vehicle on the street. The act of looking through a car window is not a search for Fourth Amendment purposes because "a person who parks a car— which necessarily has transparent windows—on private property does not have a reasonable expectation of privacy in the visible interior of his car." *Id.* at 1137. Neither probable cause nor reasonable suspicion is necessary for an officer to look through a window (or open door) of a vehicle as long as he or she has a right to be in close proximity to the vehicle. *See United States v. Beatty,* 170 F.3d 811, 814 (8th Cir.1999).

It is unclear whether Bostic challenges: 1) that the incriminating nature of the marijuana was not apparent, or 2) that officers did not have a lawful right of access to it. As for the former, police officers can identify marijuana upon plain view, based on their experience and training. *United States v. Garner*, 907 F.2d. 60, 62 (8th Cir. 1990) (Probable cause demands not that an officer be "sure" or "certain" but only that the facts available to a reasonably cautious man would warrant a belief "that certain items may be contraband or stolen property or useful as evidence of a crime.") As for the latter, seizure of drugs viewed through a car window during traffic stop is constitutional under the plain view doctrine. *United States v. Gillon,* 348 F.3d 755, 759–60 (8th Cir. 2003)

### 3.  Alternatively, the Seized Items are Admissible Pursuant to the Inevitable Discovery Doctrine.

Even if the police officers' search of the car pursuant to the automobile exception was somehow improper (and, as discussed above, it was not), then the seized items would be admissible pursuant to the inevitable discovery exception.  *Nix v. Williams*, 467 U.S. 431 (1984) (adopting inevitable discovery exception to the exclusionary rule).  In other words, items need not be

suppressed when they would be inevitably discovered via a subsequent lawful means. *See United States v. Apker*, 705 F.2d 293, 297 (8th Cir. 1983). In particular, the Eighth Circuit holds that items should not be suppressed when they would be inevitably discovered after a valid inventory of a car. *See United States v. Garreau,* 658 F.3d 854, 857 (8th Cir. 2011) (affirming lower court's decision that inevitable discovery doctrine applied after inventory search).

In order for the inevitable discovery doctrine to apply: 1) there should be a "reasonable probability" that evidence would have been discovered by lawful means, and 2) the government must be "actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Thomas*, 524 F.3d 855, 858 (8th Cir. 2008) (the standard for assessing each of these prongs is a "preponderance of the evidence").

Here, there is a reasonable probability that the gun and drugs would have been discovered when the car was lawfully inventoried. "The inventory search exception to the Fourth Amendment's warrant requirement permits law enforcement to inventory the contents of a vehicle that is lawfully taken into custody, even without a warrant or probable cause to search." *Garreau*, 658 F.3d at 857 (citing *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011)). "An inventory generally serves three purposes: the protection of the [vehicle] owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." *Id.*; *see also United States v. Allen,* 713 F.3d 382, 387–88 (8th Cir. 2013) ("Inventory searches may be conducted without a warrant or probable cause to search" and officers have "broad authority to conduct inventory searches of items 'found on the person or in the possession of an arrested person who is to be jailed.'")

Regardless of their search of the car and discovery of contraband therein, the officers were actively pursuing an alternative line of investigation at the time of the alleged constitutional violations.  Specifically, the officers were investigating several offenses, including two license plates violations as well as the resistance of a lawful detention.  Bostic also had an active warrant from St. Louis County. In any event under these circumstances, Bostic would have been arrested and the car he was driving would have been towed–necessitating the valid inventory search of the car (and the subsequent inevitable discovery of the gun, drugs, and related paraphernalia). Furthermore, there is yet another reason why, even without regard to Bostic's offenses, the car may have been lawfully inventoried. As Bostic intentionally discarded the keys to the vehicle on property not belonging to him, there is an argument that they, and perhaps the vehicle along with them, became abandoned property.  At a minimum, the police were aware that the keys would have been freely accessible to anyone, including children–or if the property was not abandoned– thieves.  Officers would have impounded the vehicle in a secure facility rather than risking the consequences of leaving the keys where they lay or the car where it curbed.

WHEREFORE, the Government prays this Court deny Bostic's motion to suppress evidence and statements.

Respectfully submitted,

**JEFFREY JENSEN**
United States Attorney

*/s/ Katharine Dolin*
KATHARINE DOLIN, #64817MO
Special Assistant United States
Attorney
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200
Attorneys for United States of
America

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically with

the Clerk of the Court to be served by operation of the Court's electronic filing system this 30th

day of October, 2019, to attorney for Defendant Bostic, Robert West.

s/ *Katharine Dolin*
Special Assistant United States Attorneys

9